

# NUMBER 13-25-00017-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

## IN THE INTEREST OF N.N.J., A CHILD

---

### ON APPEAL FROM THE 329TH DISTRICT COURT
### OF WHARTON COUNTY, TEXAS

---

## MEMORANDUM OPINION

**Before Justices Silva, Peña, and Fonseca**
**Memorandum Opinion by Justice Peña**

Appellant A.J. (Mother) appeals a judgment terminating the parental rights to her son N.N.J.[1] In two issues, Mother argues that there is legally and factually insufficient evidence supporting (1) the statutory termination grounds, and (2) that termination was in the child's best interest. We affirm.

---

[1] To protect the identity of minor children in an appeal from an order terminating parental rights, parents and children are referred to by their initials. *See* TEX. FAM. CODE ANN. § 109.002(d).

## I.    BACKGROUND

Appellee, the Department of Family and Protective Services (the Department), filed a petition seeking to terminate Mother's parental rights to N.N.J., who was six years old at the time of trial. The petition was accompanied by an affidavit in support of removal alleging neglectful supervision. The trial court awarded the Department temporary managing conservatorship of N.N.J., and the case proceeded to a bench trial, at which the following evidence was adduced.

Department caseworker Ednika Williams contacted Mother after a report that Mother was choked by her paramour M.F. in the presence of N.N.J. at a motel in Stafford, Texas. Mother later stated that M.F. had only pushed her to the floor. Upon contact, Williams learned that Mother had been shot a few months prior by a drunk friend. Williams was concerned that Mother did not have a stable environment at the time. Williams opened a family-based safety services case. Mother refused a hair follicle drug test and was unable to complete a urinalysis.

Stafford Police Department Sergeant Kristi Melendez responded to the scene following the domestic violence report. Mother told her that she was staying at the motel temporarily while N.N.J. had dental work done. Sergeant Melendez was familiar with M.F. because he was previously involved in a prostitution ring. At that time, M.F. was under house arrest and had an ankle monitor. Mother stated that M.F. previously made comments that led her to believe that he was trafficking children, and when Mother asked M.F. about whether this was happening, he punched her in the face.

A month after the domestic violence report, Williams learned that Mother was temporarily residing with B.P., whom she described as a family friend, and that Mother

would have B.P. babysit N.N.J. while she sought employment. According to Sergeant Melendez, N.N.J. told a sexual assault nurse examiner that B.P. made him "suck his penis," touched his penis, and put his finger in his bottom on several occasions. After receiving the report of sexual abuse, Williams helped Mother find a shelter for her to stay in with N.N.J.

Department caseworker Kelsey Koenig completed a family strength and needs assessment with Mother. During this process, Mother indicated a history of domestic violence with several paramours, including N.N.J.'s alleged father S.M., who was currently incarcerated. Koenig learned that Mother was diagnosed with ADHD and depression, for which Mother was not currently receiving treatment. At the time N.N.J. was removed, Mother threatened to kill Koenig, and Mother was handcuffed and placed in a patrol car.

Kelcie Jackson was the family's caseworker after the removal of N.N.J. She stated that the initial goal for the Department was family reunification. Jackson said that the Department was concerned that Mother was not able to protect N.N.J. She cited domestic violence, an unstable home life, and mental health issues as concerning factors. Mother entered into a family service plan which she substantially completed. Mother began with supervised visitation, which progressed to unsupervised visits. N.N.J. was initially excited for the visits, but he later became withdrawn. N.N.J. expressed he was afraid to visit Mother because of the "people." Jackson stated that N.N.J. has shown effects from being exposed to domestic violence. For instance, N.N.J. will flinch when Jackson gets close to him. N.N.J. has reported that Mother likes to fight and he has seen his Mother fight other

people. After N.N.J.'s removal, Mother tested positive for marijuana and cocaine.[2] During a home visit, Mother denied a caseworker access to the bedroom. Jackson stated that the Department remains concerned about Mother's history of associating with unknown males and her unstable employment history. Also, N.N.J. has told Jackson that Mother lets him play with firearms. N.N.J. recalled an instance where Mother gave him a firearm to hold while he waited for her in the car.

Jackson stated that N.N.J. wants to stay with his current foster family, but he does not want to make Mother mad. Jackson stated that he is thriving in his current placement, and she believes it is in N.N.J.'s best interest that Mother's parental rights be terminated so that he can be adopted.

Sarah and Zack Kirk are N.N.J.'s current foster parents. The family has a magnet board with tasks to accomplish each day. Sarah stated that N.N.J. is tasked with packing his snack each morning for school. N.N.J. often rides his bike to the nearby school, where he is currently in first grade. N.N.J. attends weekly play therapy sessions to assist him in processing his past trauma. Sarah has stated that N.N.J. has been diagnosed with PTSD and acute stress disorder. N.N.J. has a ptosis in his left eye, which means his vision is almost fully blocked by his eyelid. This condition will require surgery in the future. Sarah stated that N.N.J. has regressed as the duration and frequency of his visits with Mother has increased. She stated that the regression is shown through wetting himself, nausea, and fatigue. Sarah recalled that N.N.J. would hyperventilate when she washed his hair because Mother had sent a note indicating that she did not want the Kirks to touch his

---

[2] The trial court admitted the drug testing lab reports as an exhibit.

4

hair. N.N.J. described to Sarah an instance where Mother struck him with a belt in the chest and locked him in a closet that was infested with cockroaches.

Mother testified that she is currently employed and resides at a women's shelter. She is saving money so that she can provide a safe residence for N.N.J. Mother acknowledged past drug use but stated that she is now clean.

The trial court signed an order terminating Mother's parental rights pursuant to Texas Family Code § 161.001(b)(1)(D) and (E). *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E). The trial court further found that termination of Mother's parental rights was in N.N.J.'s best interests. *See id.* § 161.001(b)(2). This appeal followed.

## II.    SUFFICIENCY OF THE EVIDENCE

### A.    Standard of Review and Applicable Law

Before parental rights may be involuntarily terminated, the trier of fact must find two elements by clear and convincing evidence: (1) that the parent committed one of the statutory grounds for termination found in § 161.001(b)(1) of the family code; and (2) that termination is in the child's best interest. TEX. FAM. CODE ANN. § 161.001(b); *In re E.N.C.*, 384 S.W.3d 796, 803 (Tex. 2012).

Because of the fundamental rights at issue, due process requires that parental termination be supported by clear and convincing evidence. *In re S.M.R.*, 434 S.W.3d 576, 580 (Tex. 2014); *In re K.M.L.*, 443 S.W.3d 101, 112 (Tex. 2014). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007; *In re J.F.C.*, 96 S.W.3d 256, 264 (Tex. 2002).

In parental termination cases, our legal and factual sufficiency standards honor this elevated burden of proof while respecting the factfinder's role. *In re A.C.*, 560 S.W.3d 624, 630 (Tex. 2018) (citing *In re J.F.C.*, 96 S.W.3d at 264). "The distinction between legal and factual sufficiency lies in the extent to which disputed evidence contrary to a finding may be considered." *Id*. In a legal sufficiency review, we "cannot ignore undisputed evidence contrary to the finding, but must otherwise assume the factfinder resolved disputed facts in favor of the finding." *Id*. at 630–31 (citing *In re J.F.C.*, 96 S.W.3d at 266). Thus, "[e]vidence is legally sufficient if, viewing all the evidence in the light most favorable to the fact-finding and considering undisputed contrary evidence, a reasonable factfinder could form a firm belief or conviction that the finding was true." *Id.* at 631 (citing *In re J.F.C.*, 96 S.W.3d at 266).

Factual sufficiency, on the other hand, requires us to weigh disputed evidence contrary to the finding against all the evidence favoring the finding. *Id.* We "must consider whether disputed evidence is such that a reasonable factfinder could not have resolved it in favor of the finding." *Id.* (citing *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006)). Therefore, "[e]vidence is factually insufficient if, in light of the entire record, the disputed evidence a reasonable factfinder could not have credited in favor of a finding is so significant that the factfinder could not have formed a firm belief or conviction that the finding was true." *Id*. (citing *In re J.F.C.*, 96 S.W.3d at 266).

B.    Statutory Grounds

In her first issue, Mother argues there is legally and factually insufficient evidence supporting each termination ground.

Subsection 161.001(b)(1)(D) allows termination when the evidence proves by clear and convincing evidence that the parent knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the child's physical or emotional well-being, and subsection 161.001(b)(1)(E) allows termination if the parent has engaged in conduct, or knowingly placed the child with persons who engage in conduct, which endangers the child's physical or emotional well-being. TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E). "Subsection (D) addresses the child's surroundings and environment rather than parental misconduct, which is the subject of subsection (E)." *In re A.L.H.*, 624 S.W.3d 47, 56 (Tex. App.—El Paso 2021, no pet.) (quoting *In re B.C.S.*, 479 S.W.3d 918, 926 (Tex. App.—El Paso 2015, no pet.)). Subsection (D) permits termination based on only a single act or omission. *In re V.A.*, 598 S.W.3d 317, 329 (Tex. App.—Houston [14th Dist.] 2020, pet. denied). In contrast, subsection (E) requires evidence of a "voluntary, deliberate, and conscious course of conduct by the parent" and generally more than a single act or omission. *In re D.L.W.W.*, 617 S.W.3d 64, 78 (Tex. App.—Houston [1st Dist.] 2020, no pet.) (quoting *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.)).

"For both of these provisions, 'endanger' means 'to expose to loss or injury; to jeopardize.'" *Id.* (quoting *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996)). "Although 'endanger' means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it is not necessary that the conduct be directed at the child or that the child actually suffers injury." *Id*. "It is enough if the youth is exposed to loss or injury or his physical or emotional well-being is jeopardized." *Id.* (quoting *In re P.E.W.*, 105 S.W.3d 771, 777 (Tex. App.—Amarillo 2003, no pet.)). "As a general rule,

conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well[-]being of a child." *In re S.A.*, 665 S.W.3d 59, 70 (Tex. App.—Tyler 2022, pet. denied) (first citing *In re M.R.J.M.*, 280 S.W.3d 494, 503 (Tex. App.—Fort Worth 2009, no pet.); and then citing *In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied)).

The Department initially removed N.N.J. due to concerns that Mother was unable to protect the child from harm. The evidence at trial reflects that while Mother completed services offered by the Department, concerns remained regarding her ability to provide a safe and stable environment for N.N.J. First, Mother had yet to find permanent housing at the time of trial. A parent's "[f]ailure to maintain stability endangers the child's physical and emotional well-being." *In re S.R.*, 452 S.W.3d 351, 362 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). N.N.J.'s foster mother recalled that following visitations with Mother, N.N.J. would wet himself, have stomach aches, show fatigue, and would hyperventilate. Prior to removal, Mother exposed N.N.J. to domestic violence and left N.N.J. with someone who allegedly sexually abused N.N.J. Mother also associated with a person who was known to run a prostitution ring and had been under house arrest.

"[I]t is beyond question that sexual abuse is conduct that endangers a child's physical or emotional well-being." *In re R.W.*, 129 S.W.3d 732, 742–43 (Tex. App.—Fort Worth 2004, pet. denied) (quoting *In re R.G.*, 61 S.W.3d 661, 667 (Tex. App.—Waco 2001, no pet.), *disapproved of on other grounds*, 96 S.W.3d 256 (Tex. 2002)); *see In re G.M.*, 649 S.W.3d 801, 809 (Tex. App.—El Paso 2022, no pet.). Further, "[d]omestic violence, want of self-control, and propensity for violence may be considered as evidence of endangerment." *In re S.R.*, 452 S.W.3d 351, 361 (Tex. App.—Houston [14th Dist.]

2014, pet. denied) (quoting *In re J.I.T.P.,* 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.)). Additionally, Mother endangered N.N.J. when she left him alone with a loaded firearm. *See In re K.C.B.,* 280 S.W.3d 888, 896 (Tex. App.—Amarillo 2009, pet. denied) (noting that the presence of unsecured weapons clearly exposes a child to loss or injury); *see also In re A.O.,* No. 02-21-00376-CV, 2022 WL 1257384, at *11 (Tex. App.—Fort Worth Apr. 28, 2022, pet. denied) (mem. op.) (including in endangerment analysis the fact that baby was given access to loaded gun); *In re G.V.,* No. 14-02-00604-CV, 2003 WL 21230176, at *4 (Tex. App.—Houston [14th Dist.] May 29, 2003, pet. denied) (mem. op.) (considering leaving a child with easy access to a loaded weapon as evidence of endangerment).

There was also evidence that Mother used cocaine and marijuana. A parent's use of narcotics and its effect on her ability to parent may qualify as an endangering course of conduct. *In re J.O.A.,* 283 S.W.3d 336, 345 (Tex. 2009). "While illegal drug use alone may not be sufficient to show endangerment, a pattern of drug use accompanied by circumstances that indicate related dangers to the child can establish a substantial *risk* of harm." *In re R.R.A.,* 687 S.W.3d 269, 278 (Tex. 2024). "When a pattern of drug use is coupled with credible evidence of attendant risks to employment, housing, and prolonged absence from the children, a factfinder reasonably can find endangerment to the child's physical or emotional well-being under (D) and (E)." *Id.* at 281. Those attendant risks are present in this case as Mother has had trouble maintaining housing and employment and would leave N.N.J. alone with a firearm. *See id.*

Viewing all the evidence in the light most favorable to the trial court's (D) and (E) findings and considering undisputed contrary evidence, we conclude that a reasonable

factfinder could form a firm belief or conviction that the findings were true. *See In re A.C.*, 560 S.W.3d at 634. Further, considering the entire record, including evidence both supporting and contradicting the trial court's findings, we conclude that the contrary evidence is not so overwhelming as to undermine the court's findings. *See id.* We overrule Mother's first issue.

## C.    Best Interest

In Mother's second issue, she argues there is legally and factually insufficient evidence supporting the trial court's best interest finding.

### 1.    *Holley* Factors

There is a strong, though rebuttable, presumption that keeping a child with a parent is in the child's best interest. TEX. FAM. CODE ANN. § 153.131; *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). We consider the following factors in determining whether termination of parental rights is in a child's best interest: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parenting abilities of the parties seeking custody; (5) the programs available to assist the parties seeking custody; (6) the plans for the child by the parties seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions committed by the parent which may indicate that the existing parent-child relationship is not proper; and (9) any excuse for the acts or omissions committed by the parent. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976). The party seeking termination is not required to prove all nine *Holley* factors, and in some cases, undisputed evidence of just one factor may be sufficient to support a finding that termination is in the best interest of the child. *In re C.H.*, 89 S.W.3d 17, 25, 27 (Tex. 2002).

## 2.      Analysis

As to the first *Holley* factor, N.N.J., expressed his desire to stay in his current placement, and he would show signs of distress after extended visits with Mother. This factor supports the trial court's finding.

As to the second *Holley* factor, there was evidence that N.N.J. was receiving play therapy to treat PTSD and acute stress disorder. Further, N.N.J.'s foster parents are in the process of setting up a medical procedure to correct N.N.J.'s eyelid. On the other hand, there is no indication that Mother is capable of addressing his needs due to her unstable lifestyle. This factor supports the trial court's finding as well.

Relevant to the third *Holley* factor is Mother's drug use, presence of domestic violence, and sexual abuse of the child. *See In re M.R.*, 243 S.W.3d 807, 821 (Tex. App.—Fort Worth 2007, no pet.) (noting that a parent's drug use supports a finding that termination is in the best interest of the child); *In re R.W.*, 129 S.W.3d at 742–43; *In re J.I.T.P.*, 99 S.W.3d at 846 (stating domestic violence supports finding that termination is in child's best interest even when child is not the victim of violence). Further, as analyzed above, the evidence supports the trial court's endangerment findings. *See In re V.A.*, 598 S.W.3d at 333 ("Evidence supporting termination under the grounds listed in [§] 161.001(b)(1) can be considered in support of a finding that termination is in the child's best interest."). This factor supports the trial court's finding.

Moving to the fifth, sixth, and seventh *Holley* factors, the evidence shows that N.N.J.'s current caregivers were meeting his basic needs and wished to adopt him, while Mother showed continued instability through her lack of housing and continued drug use. *See In re S.B.*, 207 S.W.3d 877, 887–88 (Tex. App.—Fort Worth 2006, no pet.) ("A

11

parent's drug use, inability to provide a stable home, and failure to comply with [the] family service plan support a finding that termination is in the best interest of the child."). A child's need for permanence through the establishment of a "stable, permanent home" has been recognized as the paramount consideration in determining best interest. *In re G.A.C.*, 499 S.W.3d 138, 141 (Tex. App.—Amarillo 2016, pet. denied); *In re K.C.*, 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.). These factors support the trial court's best interest finding.

Regarding the eighth and ninth *Holley* factors, Mother offered no credible excuse for her failures to protect N.N.J. and provide him with a stable home. *See In re O.E.R.*, 573 S.W.3d 896, 911 (Tex. App.—El Paso 2019, no pet.). These factors support the trial court's best interest finding as well.

Considering all the *Holley* factors, we conclude that the evidence was legally and factually sufficient to rebut the strong presumption that keeping N.N.J. with his biological mother is in his best interest. *See* TEX. FAM. CODE ANN. § 153.131. We overrule Mother's second issue.

### III.    CONCLUSION

We affirm the trial court's judgment.

L. ARON PEÑA JR.
Justice

Delivered and filed on the
18th day of June, 2025.

12